UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| DALE ADAM MOSS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW M. SAUL, )<br>*Commissioner of Social Security*, )<br>)<br>Defendant. )<br>_____ ) | Civil Action No. 1:19-cv-1643 (LO/TCB) |

**REPORT AND RECCOMENDATION**

Pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405(g), Dale Adam Moss ("Plaintiff") seeks judicial review of the final administrative decision of Andrew M. Saul, the Social Security Commissioner ("Defendant"), finding that Plaintiff was not entitled to Supplemental Security Income ("SSI") under Title XVI and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. For the reasons articulated below, pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned U.S. Magistrate Judge recommends that the Court deny Plaintiff's motion for summary judgment (Dkt. 15); grant Defendant's cross motion for summary judgment (Dkt. 18); and affirm Defendant's final decision.

I. PROCEDURAL BACKGROUND

**A.   Social Security Action**

Plaintiff protectively filed his application for DIB on April 30, 2016, and an application for SSI on June 10, 2016, alleging disability beginning December 1, 2001. (R. at 162, 263-71.) At his hearing, Plaintiff amended the alleged onset date to June 10, 2016. (R. at 17, 162.) Defendant first denied Plaintiff's claim on August 9, 2016, and again upon reconsideration on

1

December 26, 2016. (R. at 162.)

After Plaintiff's timely request for a hearing in front of an administrative law judge ("ALJ"), ALJ Raghav Kotval held a hearing on November 15, 2018. (R. at 12-40.) At the hearing, Plaintiff (represented by counsel Lewis Gelobter) and impartial vocational expert, James Ryan testified. (R. at 12.) ALJ Kotval issued a decision rendering Plaintiff not disabled on January 14, 2019. (R. at 162-79.) Plaintiff appealed ALJ Kotval's determination, but the Appeals Council denied Plaintiff's request for review on November 6, 2019, making Defendant's decision final. (R. at 1, 260.)

**B.      The Instant Action**

Plaintiff sought review of Defendant's decision by filing a complaint in this Court on December 31, 2019. (Dkt. 1.) Plaintiff alleges that Defendant "erred when he failed to follow required SSA procedure," "failed to support his decision with substantial evidence," and "when ALJ Kotval failed to pose a hypothetical question to the vocational expert." (Dkt. 1 ¶¶ 12-14.) Defendant filed an answer on April 21, 2020. (Dkt. 10.) Defendant also filed the certified Administrative Record under seal, pursuant to Local Civil Rules 5(B) and 7(C)(1) on that same day. (Dkt. 11.)

The Court entered a briefing schedule on August 13, 2020. (Dkt. 12.) The parties then jointly moved to enlarge the briefing schedule, and the Court granted the motion on August 21, 2020. (Dkts. 13, 14.) Plaintiff filed his initial motion for summary judgment and memorandum in support ("Pl's Mem. Supp.") on September 12, 2020 (Dkts. 15, 16); Defendant then filed its cross motion for summary judgment and supporting memorandum ("Df's Mem. Supp.") (Dkts. 18, 19) and its memorandum in opposition to Plaintiff's motion for summary judgment (Dkt. 20) on October 14, 2020. Plaintiff filed his reply on November 4, 2020. (Dkt. 22.) Both Plaintiff and

2

Defendant waived oral argument on their respective motions for summary judgment. (*See* Dkts. 17, 21.) Accordingly, this matter is now ripe for disposition.

## II. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of Defendant's final decision is limited to determining whether the ALJ's decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337, 340 (4th Cir. 2012).

Substantial evidence has long been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Put another way, substantial evidence is "more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015). In reviewing for substantial evidence, the Court must examine the record as a whole, but it may not "undertake to re-weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). The Court must defer to Defendant's decision "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). The correct law to be applied includes the Social Security Act, its implementing regulations, and controlling case law. *See Coffman v. Bowen*, 829 F.2d 514, 517-18 (4th Cir. 1987).

While the aforementioned standard of review is deferential, where the ALJ's determination is not supported by substantial evidence on the record, or where the ALJ has made an error of law, the district court must reverse the decision. *See id.* at 517. With this standard in mind, the undersigned evaluates the ALJ's findings and decision.

### III. THE ALJ'S DECISION

The issue before the ALJ was whether Plaintiff was disabled under sections 1614(a)(3)(A), 216(i), and 223(d) of the Social Security Act. An ALJ is required to employ a five-step sequential evaluation in every Social Security disability claim analysis to determine a claimant's eligibility. The Court examines this five-step process on appeal to determine whether the correct legal standards were applied in this case, and whether Defendant's resulting decision is supported by substantial evidence in the record. 20 C.F.R. §§ 404.1520, 416.920. In accordance with the five-step sequential analysis, the ALJ made the following findings of fact and conclusions of law.

*Step One*. At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 10, 2016 (the amended alleged onset date). (R. at 164.)

*Step Two*. At the second step, the ALJ found that Plaintiff's affective disorder and obstructive sleep apnea associated with hypertension and obesity were severe impairments. (R. at 164.) The ALJ also considered Plaintiff's hyperlipidemia but determined that the impairment "cause[d] no more than minimal limitations in the ability to perform basic work activity." (*Id.*)

*Step Three*. Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met, or medically equaled, the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. (R. at 164-65.) In examining Plaintiff's mental impairments, the ALJ found that Plaintiff experienced only "mild" and "moderate" limitations. (R. at 165-68.) Accordingly, the ALJ found that Plaintiff was not disabled.

Between steps three and four, the ALJ is required to consider a claimant's residual functional capacity (RFC) pursuant to 20 C.F.R. § 416.920(e), or a claimant's ability to perform

4

physical and mental work activities on a sustained basis, despite any limitations from impairments. Here, the ALJ found that Plaintiff had the RFC to "perform a full range of work at all exertional levels," but acknowledged that he is limited to "simple routine tasks, not at a production pace, can only occasionally interact with supervisors, co-workers, and never with the public, only occasionally adjust to changes in workplace settings, only occasionally be exposed to moving mechanical parts and unprotected heights, never operate a motor vehicle, and would be off task 10% of the time." (R. at 169.)

*Step Four*. Because the ALJ found that Plaintiff did not have any past relevant work, he proceeded to step five of the sequential analysis. (R. at 177.)

*Step Five*. Finally, after considering Plaintiff's age, education, lack of work experience, and RFC, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 178.)

Therefore, the ALJ concluded that Plaintiff was not under a disability within the meaning of section 1614(a)(3)(A) of the Social Security Act from June 10, 2016 (the amended alleged onset date) through the date of the decision. (R. at 178-79.)

IV. ANALYSIS

Plaintiff raises three points of error in his motion for summary judgment. First, that the Appeals Council erred in not reviewing his new evidence pursuant to 20 C.F.R. § 416.1470. (Pl's Mem. Supp. at 5-8.) Second, that the ALJ failed to support his determinations, including Plaintiff's RFC assessment, with substantial evidence. (Pl's Mem. Supp. at 3-13.) And finally, that the ALJ erred by failing to pose a proper hypothetical question to the vocational expert. (Pl's Mem. Supp. at 13-14.) Defendant contends that the Appeals Council's failure to review Plaintiff's new evidence does not warrant remand, and that the ALJ's RFC assessment and

reliance on the vocational expert's testimony is supported by substantial evidence.

A.  **Correct Legal Standard**

First, in reviewing the record, the ALJ clearly applied the correct legal standard. As noted above, the ALJ addressed, as appropriate, each part of the five-step sequential evaluation analysis prior to reaching a decision. *See supra* Part III. The ALJ summarized the applicable standard in detail and then applied that standard faithfully to the facts of the case. (R. at 163-64.) Accordingly, the ALJ made no clear error of law in this regard.

B.  **Plaintiff is Not Entitled to Remand Based Upon the Appeals Council's Refusal to Review His New Evidence**

Plaintiff first claims he is entitled to remand because the Appeals Council did not review the April 18, 2019 letter and records from Rachael Johnson, LHMP-R, M.A., Ed.S., QMPH, QMHCM not included in the record. But, as Defendant argues, there was no "reasonable probability" that this new evidence would have changed the outcome of the ALJ's decision in accordance with 20 C.F.R. § 416.1470. As such, Plaintiff is not entitled to remand on this ground.

Under section 416.1470, the Appeals Council will review a case under several circumstances, including if "the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the dates of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5). Still, in order for the Appeals Council to review new evidence under this subsection, a plaintiff must "show good cause for not informing [the Appeals Council] about or submitting the evidence" earlier. 20 C.F.R. § 416.1470(b). Good cause may include:

6

> (1) Our action misled you;
> (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or
> (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to:
>> (i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;
>> (ii) There was a death or serious illness in your immediate family;
>> (iii) Important records were destroyed or damaged by fire or other accidental cause;
>> (iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing; or
>> (v) You received a hearing level decision on the record and the Appeals Council reviewed your decision.

20 C.F.R. § 416.1470(b).

Further, if a claimant submits additional evidence that does not relate to the relevant time period "or the Appeals Council does not find [a claimant] had good cause for missing the deadline to submit evidence" the Appeals Council will send the claimant "a notice that explains why it did not accept the additional evidence[.]" 20 C.F.R. § 416.1470(c).

In his April 26, 2019 argument to the Appeals Council, Plaintiff submitted an April 18, 2019 letter and clinical records from senior behavioral health clinician, Rachael Johnson ("Clinician Johnson") at the Fairfax-Falls Church Community Services Board. (Pl's Mem. Supp. Exhibit 1). Clinician Johnson explained:

> This letter is being composed to report that Dale's symptoms have changed, and I have diagnosed him with Bipolar I Disorder, current episode mixed, severe with psychotic features. It is my clinical opinion that he fits this criteria based off what he has reported to me during our biweekly therapy sessions. It is also my clinical opinion that client is unable to work due to the severity of his diagnosis.

(*Id.*) Clinician Johnson's letter is followed by a report detailing Plaintiff's symptoms, as reported by Plaintiff and his long-term girlfriend, as well as Plaintiff's medical history. (*Id.*) Plaintiff does not allege that the letter and records meet any of the above-listed reasons constituting "good

7

cause." *See* 20 C.F.R. § 416.1470(b). Rather, Plaintiff claims Clinician Johnson's letter and report was "new, material, and related to the period on or before the date of the hearing decision" and he is therefore entitled to remand. There are numerous problems with Plaintiff's argument, however, as explained below.

First, Plaintiff's new evidence does not relate to the relevant time period. Plaintiff's amended alleged onset date is June 10, 2016. (R. at 162.) The relevant period of disability in this case is therefore June 10, 2016 through January 14, 2019 (the date of the ALJ's decision). (R. at 178.) Clinician Johnson's letter and report that Plaintiff's symptoms changed after the relevant period on April 18, 2019, did not entitle Plaintiff to Appeals Council review then, nor remand now.

Second, even if the new evidence did relate to the relevant time period, it is not "material." *See* 20 C.F.R. § 416.1470(a)(5). "Evidence is new 'if it is not duplicative or cumulative' and it is material if there is a reasonable possibility that the new evidence would have changed the outcome.'" *Meyer v. Astrue*, 662 F.3d 700, 705 (4th Cir. 2011) (quoting *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.3d 700, 704 (4th Cir. 1991)). Under this standard, Clinician Johnson's letter and report is not "material" because it would not have changed the outcome of the ALJ's decision for two reasons. First, the letter and record do not constitute an "acceptable medical source." The Social Security Act requires an ALJ to "regardless of its source, evaluate every medical opinion [he] receives." 20 C.F.R. § 404.1527(c). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the plaintiff's] impairment(s), including [the plaintiff's] symptoms, diagnosis and prognosis, what [the plaintiff] can still do despite impairment(s), and [the plaintiff's] physical or mental restrictions." 20 C.F.R. § § 404.1527(a)(1); 404.1513(a)(2). The

8

Social Security Act further differentiates "medical opinions" and "other sources" including opinions from therapists, naturopaths, and other nonmedical sources. § 404.1513(d). An ALJ *may* use evidence from "other sources" in his determination, but unlike with medical sources, he is not required to do so. *See* Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006) (noting the difference between "what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision").[1]

Accordingly, the ALJ would not have been required to consider Clinician Johnson's letter or report even if it had been included in the record. *See* 20 C.F.R. §§ 416.902(a), 416.927(a)(1). As such, there could not have been a "reasonable probability that the additional evidence would change the outcome of the decision," and the letter and report are not material. 20 C.F.R. § 416.1470(a)(5).

Additionally, Clinician Johnson's determination that Plaintiff was "unable to work" is a legal conclusion reserved to the Commissioner, and therefore is not entitled to special weight. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the ALJ] will determine that you are disabled," as such opinions are not medical opinions and are reserved for the Commissioner. 29 C.F.R. § 404.1527(d). An ALJ need "not give any special significance to the source of an opinion on issues reserved to the Commissioner." *Id.*

Plaintiff further alleges he is entitled to remand on this ground because the Appeals Council never sent him "a notice that explains why it did not accept the additional evidence[.]" 20 C.F.R. § 416.1470(c). Although the Appeals Council should have sent Plaintiff a notice pursuant to subsection 416.1470(c), their failure to do so amounts no more than harmless error.

---

[1] N.B. SSR 06-03p, as well as § 404.1513(d), were rescinded effective March 26, 2017. *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82, Fed. Reg. 15,263 (Mar. 27, 2017). The changes do not apply, however, because Plaintiff's claim was filed before that date.

And, this Court need not reverse the ALJ's decision if the error is harmless. *Morgan v. Barnhart*, 142 F. App'x 716, 723 (4th Cir. 2006). Further, Plaintiff, as the attacking party, bears the burden of establishing harmful error. *See Shineski v. Sanders*, 556 U.S. 396, 409 (2009). As discussed above, Plaintiff's new evidence would not have changed the outcome of this case. As such, Plaintiff has not met his burden in establishing harmful error and he is not entitled to remand on this basis.

### C. The ALJ's Determinations and RFC Assessment are Supported by Substantial Evidence

Plaintiff next contends that the ALJ's opinion is not supported by the substantial evidence in the record for two reasons. First, Plaintiff contests the ALJ's finding that he does not meet or medically equal listing 12.04 (depressive, bipolar and related disorders) and listing 12.06 (anxiety and obsessive-compulsive disorders), 20 C.F.R. Pt. 404 Subpt. P. App. 1, including the ALJ's paragraph B and C criteria. (Pl's Mem. Supp. at 9-12). Second, Plaintiff alleges that the ALJ's RFC assessment is not supported by the substantial evidence. (Pl's Mem. Supp. at 12-13). The undersigned will examine each claim in turn.

    i.    <u>Substantial evidence supports the ALJ's finding that Plaintiff does not meet or medically equal Listings 12.04 or 12.06, including the paragraphs B and C criteria</u>

The ALJ determined that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 164-69.) Plaintiff, however, claims that the substantial evidence demonstrates that he does meet or medically equal listing 12.04 (depressive, bipolar and related disorders) and listing 12.06 (anxiety and obsessive-compulsive disorders) (Pl's Mem. Supp. at 9). *See* 20 C.F.R. Pt. 404 Subpt. P. App. 1.

To meet or medically equal a listing, a Plaintiff must "meet *all* of the specified medical

criteria." *Sullivan v. Zebley*, 492 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* The medical listings were meant to "streamline the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Id. (citing Bowen v. City of New York*, 476 U.S. 467, 471 (1986)). Accordingly, it can be difficult for plaintiffs to show they meet a listing, but "it is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987). Additionally, listing 12.04 and 12.06 require that a Plaintiff meet all criteria under subsections A and B or A and C. 20 C.F.R. pt. 404, Subpt. P, app. 1.

Here, Plaintiff's provided evidence does not show that he meets the requisite criteria in subsections B or C. To support his contentions, Plaintiff points to evidence diagnosing him with bipolar disorder. As explained at length in the ALJ's opinion, however, more than a diagnosis, even a severe diagnosis, is required for a finding of disability pursuant to listings 12.04 and 12.06. *See* 20 C.F.R. §416.925(d). Plaintiff first points to treating psychiatrist Dr. Sadia Rahman's 2012 and 2018 diagnoses of Bipolar I and Bipolar II disorders. (R. at 1333, 1474.) In her 2012 diagnosis, Dr. Rahman opined that Plaintiff was "unable to tolerate work related stressors secondary to mental illness" and that he had a "fragile mental status with low frustration tolerance and impulse control."[2] (R. at 1333.) Similarly, in 2018, Dr. Rahman reported, among other symptoms, that Plaintiff had "low frustration tolerance, mood swings,

---

[2] As Defendant noted, Dr. Rahman's 2012 record occurred four years prior to the relevant period, which began on June 10, 2016. (Df's Mem. Supp at 17.) The ALJ therefore need not have discussed this record at all.

11

depression with lack of motivation and interest in things.[3] (R. at 1474-75.) Additionally, Plaintiff referenced his own hearing testimony in which he expressed difficulty being around people and feelings of anger, fear and hopelessness. (R. at 22-27.)

The undersigned finds that the ALJ's analysis is supported by substantial evidence and will discuss his paragraph B and C analyses in turn.

    a.    <u>Paragraph B Criteria</u>

In his paragraph B discussion, ALJ correctly explained that:

> To satisfy the 'paragraph B' criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves.

(R. at 165.) The ALJ evaluated Plaintiff's limitations in each area and supported his findings that Plaintiff exhibited only mild to moderate limitations with evidence in the record.

*First*, the ALJ concluded that Plaintiff had only mild limitation in understanding, remembering, or applying information. (R. at 165-66.) To support his conclusion, ALJ Kotval noted that Plaintiff is self-taught in computers and his career testing equaled or exceeded the aptitude required for a number of fields. (R. at 433-34.) Additionally, the ALJ considered the fact that Plaintiff had a commercial drivers' license and could drive himself places, venture into the woods alone, take photographs, cook for himself, complete his own medical paperwork, and attend medical screenings and lose weight with a health coach. (R. at 165, 417, 425, 551-52, 1256, 1361, 1375-76.) Further, Plaintiff had never lived alone, but had lived with his girlfriend

---

[3] In 2018, Dr. Rahman evaluated Plaintiff under an outdated version of the paragraph B criteria. (R. at 1475-77.) Nevertheless, her findings that Plaintiff was only mildly limited in his activities of daily living; moderately limited in maintaining concentration, persistence or pace; and markedly limited in maintaining social functioning support the ALJ's findings under the current paragraph B criteria. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 6613-01 (effective January 17, 2017).

and with his parents. (R. at 165-66, 417, 1362, 1413.) The ALJ also considered Plaintiff's mental status and reports that he often felt sad or depressed, presented as alert and oriented with appropriate hygiene, normal speech, good eye contact, normal interaction and affect. (R. at 166, 415, 468, 591, 1361, 1376, 1383-84, 1393, 1404, 1413.) Still, ALJ Kotval acknowledged that Plaintiff had a history with alcohol and cannabis use and, after heavy drinking, had once attempted suicide and on another occasion brandished a machete. (R. at 166, 435, 453, 455, 459, 467, 548.)

*Second*, ALJ Kotval found that Plaintiff demonstrated moderate limitation in interacting with others. (R. at 166.) In making this determination, the ALJ noted that prior to the relevant period, Plaintiff was hospitalized for suicidal ideation and incarcerated for brandishing a machete following heavy alcohol and cannabis use. (R. at 166, 435, 453-57, 548.) Plaintiff lost prior jobs due to anger management issues and had limited friendships and issues with interpersonal skills. (R. at 166, 459, 460.) But, Plaintiff was able to cohabitate and maintain his relationship with his parents and girlfriend and implement coping skills into his everyday life. (R. at 166, 417, 582, 1376, 1403, 1413.)

*Third*, in concentrating, persisting, or maintaining pace, the ALJ concluded Plaintiff had moderate limitation. (R. at 166-67.) The ALJ considered most of the above factors, including Plaintiff's abilities with computers and software, his commercial drivers' license, reading and reading comprehension scores, walks in the woods, cooking, photography, and ability to complete his own medical paperwork. (R. at 166, 417, 433-35, 425, 551-52, 1256, 1361, 1375-76.) The ALJ also noted, however, Plaintiff's history of hospitalization, incarceration, and substance abuse. (R. at 167, 435, 453-57, 548.) Plaintiff had feelings of sadness and depression, though he had fair concentration and normal memory. (R. at 166, 415, 468, 591, 1361, 1376,

1383-84, 1393, 1404, 1413.) And, his symptoms improved with medication when he stuck to his medication regime. (R. at 167, 417, 582, 601, 1376, 1451, 1473.)

*Finally*, the ALJ concluded Plaintiff had moderate limitation in adapting or managing oneself. (R. at 167-68.) ALJ Kotval again detailed Plaintiff's daily activities, as discussed above, including his ability to complete his own medical paperwork, lose weight, attend medical screenings, and visit his girlfriend, along with his average aptitude tests and computer abilities. (R. at 167-68, 165, 417, 425, 551-52, 1256, 1361, 1375-76.) And again, ALJ Kotval acknowledged Plaintiff's history of drug use, anger management issues, and limited interpersonal relationships. (R. at 167, 435, 453-57, 548.)

Accordingly, the ALJ concluded that the "evidence does not support a finding of listing level impairment due to mental illness or sleep apnea, notwithstanding obesity, hypertension, or evidence of treatment noncompliance." (R. at 168.) Given the level of detail and support in the record, the undersigned finds that the ALJ's paragraph B analysis was reasonable

    b.    <u>Paragraph C Criteria</u>

In evaluating Plaintiff under the paragraph C criteria, ALJ Kotval concluded that

> There is no evidence showing a medically documented history of a chronic mental impairment of at least two years' duration with evidence that the claimant relies, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support of a highly structured setting(s), to diminish symptoms and signs of their mental disorder.

(R. at 168.) The ALJ further noted that Plaintiff lived independently with his parents and attended medical appointments and shopped in stores on his own. (*Id.*) And, the ALJ recognized that Plaintiff had been institutionalized due to intoxication, but determined that the evidence overall "does not support a finding that changes in the claimant's environment or increased life demands led to exacerbation of symptoms and signs, deterioration in functioning, and resulting in an inability to function outside the home or a more restrictive setting without substantial

14

psychosocial supports." (R. at 168.)

Plaintiff asserts that the ALJ erred in making this paragraph C finding because the ALJ gave limited weight to Dr. Rahman's 2018 opinion in which she noted, among other things, Plaintiff's history of bipolar, obesity, and sleep disturbance. (R. at 1474-77.) The ALJ gave only partial weight to Dr. Rahman's 2018 opinion in making his paragraph C determinations because her checkbox opinion that even minimal increases in Plaintiff's mental demands or environmental changes would cause decompensation in his condition was contradicted by Plaintiff's daily activities discussed above. (R. at 168, 1477.) In according limited weight to Dr. Rahman's opinion, the ALJ cited specific examples of Plaintiff's daily living activities to reach a reasonable conclusion.[4] As such, the undersigned may not re-weigh the evidence. *See Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001).

In sum, the undersigned finds that the ALJ did not "pick and choose" evidence that supported his conclusion. (Pl's Mem. Supp. at 11.) Rather, the ALJ looked at the record as a whole and built "an accurate and logical bridge from the evidence to his conclusion." *Woods v. Berryhill*, 888 F.3d 686, 695 (4th Cir. 2018); *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

    ii.    <u>Substantial Evidence Supports the ALJ's RFC Assessment</u>

Plaintiff next contends that the ALJ's RFC assessment is not supported by substantial evidence because he failed to consider all of Plaintiff's impairments. (Pl's Mem. Supp. at 12-13.) Specifically, Plaintiff alleges the ALJ did not properly consider his sleep apnea, hypertension, and obesity. (*Id.*) It is clear from the ALJ's determination, however, that he considered and

---

[4] And, as noted above, *see supra* n.3, Dr. Rahman based this opinion on an outdated version of the paragraph B and C criteria. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 6613-01 (effective January 17, 2017).

15

discussed these impairments in detail.

An RFC "is the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1). An ALJ assesses a claimant's RFC "based on all the relevant evidence in the case record." *Id.* Further, an ALJ must consider all of a claimant's medically determinable impairments in making his RFC assessment. 20 C.F.R. § 416.945(a)(2).

As Plaintiff noted, the ALJ concluded that Plaintiff's obstructive sleep apnea associated with hypertension and obesity were medically severe impairments. (R. at 164.) Nevertheless, the ALJ assessed the following RFC:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple, routine tasks, not at a production pace, can only occasionally interact with supervisors, co-workers, and never with the public, only occasionally adjust to changes in workplaces settings, only occasionally be exposed to moving mechanical parts and unprotected heights, never operate a motor vehicle, and would be off task 10% of the time.

(R. at 169.) The ALJ's RFC analysis spanned over eight pages in which he thoroughly examined all of Plaintiff's evidence and impairments. (R. at 169-77.)

First, the ALJ thoroughly considered Plaintiff's obesity in assessing his RFC. He noted that in March 2011 (prior to Plaintiff's amended alleged onset date), Plaintiff was "mildly obese, clean, and articulate, with intact cognition, linear and goal-directed thought process, and full range of affect." (R. at 171, 417.) Further, in 2013, Dr. Rahman recommended diet and exercise for his weight. (R. at 171, 584.) ALJ Kotval discussed Plaintiff's weight and body mass index progression in a number of places and noted that Plaintiff was "[d]iagnosed with obesity." (R. at 174, 175.)

Second, the ALJ discussed Plaintiff's sleep apnea in great detail. ALJ Kotval acknowledged Plaintiff's testimony that he had trouble sleeping. (R. at 170.) The ALJ then

discussed Plaintiff's sleep apnea treatment, which included a sleep study where he tested positive "for 'severe' obstructive sleep apnea and 'moderate to severe' desaturation with minimum saturation of 79% and mean saturation of 91.3%, but with no significant cardiac arrythmia and no significant leg movements." (R. at 175, 1333-49.) Still, the ALJ acknowledged that the record does not show Plaintiff used a dental device for sleep apnea treatment. (R. at 175.)

Finally, ALJ Kotval acknowledged Plaintiff's lack of treatment for hypertension multiple times throughout the RFC assessment. He recognized that Plaintiff was "[d]iagnosed with...hypertension." (R. at 174, 175.) And, the ALJ noted that, as of May 2018, Plaintiff was treating his hypertension. (R. at 170, 339.) In May 2013, however, Plaintiff "was having nosebleeds but he did not want to treat hypertension," and in December 2014, he "was not taking medication for hypertension." (R. at 171, 172, 557, 524.) In February 2015, Plaintiff had a prescription for his hypertension, though in June 2016, he "resisted treating hypertension" and did not comply with his medication regime. (R. at 172, 173, 466 593, 1350.)

Accordingly, the undersigned finds that the ALJ adequately considered all of Plaintiff's impairments in his RFC analysis, and Plaintiff is not entitled remand on this basis.

**D.     The ALJ Posed Proper Hypothetical Questions to the Vocational Expert**

Finally, Plaintiff asserts he is entitled to remand because the ALJ failed to pose proper hypothetical questions to the vocational expert during the hearing. (Pl's Mem. Supp. at 13-14.) According to Plaintiff, the ALJ failed to account for all of Plaintiff's impairments in his hypothetical questions to the vocational expert and did not inquire about anticipated absenteeism as a result of those impairments. The ALJ did, however, ask the vocational expert proper hypothetical questions and discuss Plaintiff's anticipated absenteeism at the hearing.

"In order for a vocational expert's opinion to be relevant or helpful, it must be based

upon a consideration of all other evidence in the record and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 51 (4th Cir. 1989) (internal citations omitted). But, the hypothetical questions "need only reflect those impairments supported by the record" and need only include those impairments "that the ALJ finds to be severe." *Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003).

The ALJ properly posed to the vocational expert a series of hypothetical questions reflecting Plaintiff's impairments and resulting limitations. Specifically, ALJ Kotval asked of the vocational expert:

> Please assume a hypothetical individual of the claimant's age and education with the past work that you described which in this case is none. Further assume this individual is limited to simple, routine tasks not at a production pace. This individual can only occasionally interact with supervisors, co-workers and the public. This individual can only occasionally adjust to changes in work place settings. This individual can only occasionally be exposed to moving mechanical parts and never unprotected heights and finally this individual can never operate a motor vehicle.

(R. at 34.) The vocational expert replied that such a hypothetical individual would be able to perform jobs existing in significant numbers in the national economy. (R. at 34-35.) ALJ Kotval then changed his hypothetical to ask whether a hypothetical person with the same limitations but who could "never interact with the public" could still find employment, and the vocational expert explained that such an individual could perform the same jobs he had listed previously. (R. at 35-36.) The limitations in the ALJ's hypothetical reflect those consistent with the record, the ALJ's RFC assessment, and those associated with Plaintiff's severe impairments.

Further, the ALJ did discuss Plaintiff's absenteeism. At the end of the above hypothetical, the ALJ deferred to Plaintiff's counsel to question the vocational expert. (R. at 36.) The discussion between the ALJ, vocational expert, and Plaintiff's counsel was largely about

18

Plaintiff's sleep impairments and anticipated absenteeism. (R. at 36-39.) Answering questions from both the ALJ and Plaintiff's counsel, the vocational expert clearly opined that absenteeism of more than four days per month could render an individual incapable of sustaining full time employment.[5] (R. at 38.) And, the ALJ asked the vocational expert, "if the individual was off task less than 20% there would be no change to any of the...answers you gave me for my hypotheticals?" (*Id.*) The vocational expert maintained that such a hypothetical individual would still be able to find work. (*Id.*)

Accordingly, the ALJ posed proper hypotheticals to the vocational expert that adequately reflected Plaintiff's impairments and the resulting limitations consistent with the substantial evidence discussed throughout this report and recommendation and with the record.

## V. RECOMMENDATION

For the reasons set forth above, the undersigned U.S. Magistrate Judge recommends that the Court enter an order (1) granting Defendant's cross motion for summary judgment (Dkt. 18); (2) denying Plaintiff's motion for summary judgment (Dkt. 15); and (3) affirming the final decision of Defendant.

---

[5] The ALJ was not required, however, to adopt Plaintiff's counsel's assumption that Plaintiff would be absent more than four days a month given the substantial evidence to the contrary.

## VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to counsel of record.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge
THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

November 19, 2020
Alexandria, Virginia